**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NICOLE FINLEY,
      Plaintiff,

      vs.

SEVEN HILLS OB-GYN ASSOCIATES, LLC,
      Defendant.

Case No. 1:22-cv-720

McFarland, J.
Litkovitz, M.J.

**ORDER**

This matter is before the Court on plaintiff Nicole Finley's motion for leave to file a first amended complaint (Doc. 35), defendant's memorandum in opposition (Doc. 36), and plaintiff's reply memorandum (Doc. 38).

## I.    Introduction

In this employment discrimination case, plaintiff initially named only Seven Hills OB-GYN Associates, Inc., D/B/A Axia Women's Health, D/B/A Seven Hills Women's Health Centers as defendant. On May 22, 2023, the parties agreed to substitute "Seven Hills OB-GYN Associates, LLC" ("Seven Hills") as the proper party defendant.[1] Plaintiff now seeks to amend her complaint to add Axia Ohio Management, LLC ("AOM") and Regional Women's Health Management, LLC ("RWHM") "as joint-employer/integrated enterprise defendants with Seven Hills." (Doc. 35 at PageID 251). The issue currently before the Court is whether plaintiff should be permitted to amend her complaint to include AOM and RWHM as defendants in addition to the stipulated defendant, Seven Hills. Due to the complicated nature of the corporate relationships involved, the parties disagree as to plaintiff's true employer(s).

Plaintiff claims that Seven Hills, AOM, and RWHM are liable as plaintiff's joint

---

[1] Seven Hills OB-GYN Associates, LLC also stipulated it will not allege or attempt to disclaim any liability to "Axia Women's Health" or any other related entity. (Doc. 13 at PageID 42).

employers, and their roles "were concealed for years of litigation through Seven Hills' carefully parsed representations, incomplete discovery responses, refusal to produce documents, and insistence 'Axia' was just a 'trade name.'" (Doc. 35 at PageID 257).  Seven Hills counters that AOM and RWHM are what are known as Management Services Organizations ("MSO") which "cannot lawfully employ any employees who provide clinical services, which [p]laintiff did." (Doc. 36 at PageID 399).  According to Seven Hills, AOM served as the MSO during plaintiff's employment, and "RWHM is the MSO that presently (but not during [p]laintiff's employment) manages the non-clinical operations of Seven Hills." (*Id.*).  Seven Hills further contends that plaintiff knew or should have discovered the facts underlying her claims years ago; the addition of two new defendants at this late date unfairly prejudices Seven Hills; and any new claims are not brought in good faith and are futile since neither of the new entities employed plaintiff.  (*Id.*).

For the reasons that follow, plaintiff's motion will be granted.

## II.     Factual Background

### a.  *Employment History and Claims*[2]

From 2006 until her termination in December 2020, plaintiff worked as a sonographer and then as an ultrasound manager.  (Doc. 35-1 at PageID 265).  She reported to Holly Woprice, who Seven Hills identified during discovery as Director of Operations for Regional Women's Health Management, LLC, and to Jennifer Dunaway, later identified by Seven Hills as Senior Vice President for Axia Ohio Management, Inc.[3]  (Doc. 35-1 at PageID 265; Doc. 36, Ex. D at

---

[2] Aside from the addition of the two newly named defendants, the facts alleged in plaintiff's proposed amended complaint essentially repeat those alleged in the original complaint.  (Compare Doc. 1 with Doc. 35-1).

[3] Plaintiff's motion refers to both "Axia Ohio Management, Inc." (Doc. 35 at PageID 255) and "Axia Ohio Management, LLC." (*Id.* at PageID 251, 253).  Seven Hills' opposition brief refers to the entity at issue as "Axia Ohio Management, LLC." (Doc. 36 at PageID 399).  Seven Hills' verified answers to plaintiff's Second Interrogatories, however, identify the same entity as "Axia Ohio Management, Inc." (Doc. 36 at PageID 452).  Further, the Management Services Agreement (MSA) produced by defendant in April 2025 is between Seven Hills and Axia Ohio Management, Inc.  (Doc. 36, Ex. Q).  For purposes of this Order, the entity referred to as "AOM" is

2

PageID 435 and Ex. E at PageID 438).

Plaintiff's duties as ultrasound manager included ensuring that ultrasound services were correctly billed and charted and ultrasound technicians were appropriately scheduled and paid. (Doc. 35-1 at PageID 265). Plaintiff alleges that after she sustained a shoulder injury at work in 2019, she received FMLA leave and remained limited in her ability to perform ultrasounds for the remainder of her employment. (Doc. 35-1 at PageID 265-66). In November 2020, plaintiff informed Ms. Woprice and Ms. Dunaway that she needed additional surgery as soon as possible and would require several weeks off for recovery. (*Id.* at PageID 266). As plaintiff had not taken FMLA leave throughout 2020, her upcoming surgery would have qualified for FMLA and disability leave. (*Id.*). When plaintiff's managers questioned how long she would be out — pointing to understaffing in the ultrasound department — she delayed her surgery until January 2021. (*Id.*).

Plaintiff alleges she discovered that an ultrasound technician received medical services while clocked in as an employee on or about December 28, 2020.[4] (*Id.*). Because the technician failed to clock out before receiving those services, the employee was not billed for the services received, and plaintiff reported the incident to Ms. Dunaway. (*Id.*). Plaintiff claims that in response to her report, Ms. Dunaway suspended her and ultimately terminated her employment under the stated justification that plaintiff had committed HIPAA infractions. (*Id.* at PageID

---

Axia Ohio Management, Inc. based upon the MSA and other discovery propounded by Seven Hills.

[4] Plaintiff's original and amended complaints reference December 28, 2021 as the date plaintiff alleges she reported the technician failing to clock out. However, the year 2021 appears to be in error. (Doc. 1 at PageID 4; Doc. 35-1 at PageID 266). Plaintiff's termination date is listed throughout the parties' briefs as either December 31, 2020 (Doc. 35 at PageID 251, 259; Doc. 35-4, Ex. A at PageID 315, 317, 321; Doc. 36 at PageID 398) or December 31, 2021 (Doc. 35-4, Ex. A at PageID 321; Doc. 36 at PageID 427-28). Nevertheless, the parties agree that plaintiff's EEOC charge was filed in October 2021. (Doc. 35-1 at PageID 264; Doc. 36, Ex. D at PageID 435). Therefore, the Court assumes that plaintiff's employment was terminated on December 31, 2020 and any references to the December 2021 termination date is a scrivener's error.

3

267).[5] Plaintiff alleges that Ms. Dunaway and Ms. Woprice used this as an excuse to terminate her employment so they could avoid having to provide plaintiff with more leave or other accommodations and to replace her once she was terminated. Plaintiff states she was explicitly authorized to view ultrasound medical information of all patients as a treatment-related and payment-related health care operations activity. (*Id.*). Plaintiff's employment was terminated on December 31, 2020. (*Id.* at PageID 266; Doc. 36, Ex. F at PageID 452).

   b. *Pre-Suit Proceedings and Filing of the Complaint*

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*See* EEOC Charge No. 473-2022-00134, received October 26, 2021, Doc. 36, Ex. D at PageID 435; Doc. 35-1 at PageID 264). The EEOC charge named as respondent "Axia Women's Health f.k.a. Seven Hills Women's Health," located at 2060 Reading Road, Suite 170, Cincinnati, Ohio 45202. (Doc. 36, Ex. D at PageID 435). The EEOC charge stated that plaintiff reported directly to Ms. Woprice, and she discussed her need for medical treatment with Ms. Dunaway. (*Id.*). The EEOC charge alleged discrimination based on retaliation, disability, and age. (*Id.*).

Plaintiff filed this action against Seven Hills on December 6, 2022. (Doc. 1 at PageID 1). Plaintiff alleges claims of disability discrimination and FMLA interference. She alleges that Seven Hills terminated her employment because of her disability and her exercise of FMLA rights, rather than for the reason asserted by defendant—that she accessed the confidential medical records of a co-worker in violation of HIPAA. (Doc. 35 at PageID 268-69).

   c. *Scheduling Orders and Discovery Deadlines*

---

[5] Plaintiff alleges that Ms. Dunaway and Ms. Woprice were aware that another employee, who had not taken FMLA leave and was not disabled, committed a HIPAA violation by sharing one patient's records with another, but unlike plaintiff this employee received only a written warning. (*Id*. at PageID 267).

The Court entered an initial scheduling order setting the deadline for motions to amend the pleadings as May 24, 2023, and the first discovery deadline as December 31, 2023.  (Doc. 12).  Seven Hills issued written discovery on May 22, 2023, and deposed plaintiff on November 20, 2023.  (Doc. 36 at PageID 400). Plaintiff served interrogatories on defendant, which were answered on or about November 10, 2023.  (*Id.*; Doc. 36, Ex. E at PageID 448).

On December 19, 2023, the Court granted a joint motion to extend the discovery deadline to April 30, 2024.  (Docs. 17, 18).  In March 2024, plaintiff objected to Seven Hills' discovery responses as deficient.  (Doc. 36 at PageID 400).  In May 2024, plaintiff requested an informal discovery conference.  (Doc. 19).  The Court granted plaintiff's request and held an informal discovery conference on May 21, 2024.  Following the informal discovery conference, the Court issued an Order on May 22, 2024 requiring defendant to submit updated interrogatory responses relating to "Axia" and its connection to Seven Hills.  (Doc. 20).  Additionally, the Court extended the discovery deadline to February 28, 2025.  (Doc. 28).

On February 22, 2025, Seven Hills' counsel provided additional discovery in the form of a privacy and information security sanctions policy that had not been previously provided to plaintiff.  (Doc. 35-5, Ex. N at PageID 356-59).  Seven Hills' counsel stated that they believed the policy was not previously provided to plaintiff because it was "housed in 'IT' policy rather than in HR," and they would be consulting with defendant's in-house counsel to confirm all relevant policies had been produced.  (*Id.*).  The privacy and information security sanctions policy propounded by defendant's counsel displays a teal-colored mark in the upper left corner with the name "Axia Women's Health" and is dated July 1, 2020.  (*Id.* at 358-59).  The first line of the policy states, "Axia Women's Health will fairly apply sanctions to employees who violate company Information Security, HIPAA Privacy or HIPAA Security policies or procedures."  (*Id.*

5

at 358).

Based on the newly produced privacy and information security sanctions policy, plaintiff requested an informal discovery conference that was held on February 25, 2025. (Doc. 31). During the conference, plaintiff's counsel expressed concern about the production of the policy and the possibility that additional documents were still outstanding. (*See generally* February 25, 2025 informal discovery conference, *Id.*). The parties agreed that a discovery extension was warranted so that defendant could search for additional responsive documents. (*Id.*).

On March 25, 2025, the undersigned held another informal conference at plaintiff's request to extend the discovery deadline. (Doc. 32; Doc. 36 at PageID 399; Doc. 38 at PageID 461). On March 26, 2025, the Court ordered a stay of the discovery deadline and directed plaintiff to (1) propound supplemental discovery requests relating to the relationship between Seven Hills, AOM, RWHM by March 29, 2025, and (2) propound Rule 30(b)(6) deposition topics by April 4, 2025. (Doc. 32). The Court further ordered defendant to respond to the supplemental discovery request within seven days. (*Id.*). The parties understood that dispositive motion deadlines were likewise stayed. (Doc. 33 at PageID 246).

On March 28, 2025, counsel for plaintiff propounded plaintiff's First Request for Admissions, Second Interrogatories, and Second Document Requests to Defendant. (Doc. 36, Ex. C at PageID 429; Doc. 38, Ex. 1 at PageID 473). On April 4, 2025, counsel for Seven Hills served responses to those discovery requests and produced the Management Services Agreement ("MSA") between Seven Hills and AOM and related documents. (Doc. 36, Ex. C at PageID 429).

On April 5, 2025, counsel for plaintiff served Plaintiff's Notice of Rule 30(b)(6)

Deposition on defendant.[6]  (Doc. 36 at PageID 400, Ex. A at PageID 416; Doc. 38, Ex. 1 at PageID 472).  The deposition notice identified thirteen topics pertaining to Seven Hills' document preservation, collection, and production efforts.  (Doc. 36, Ex. A at PageID 414-20).  The deposition notice captioned the case as "Nicole Finley v. Seven Hills OB-GYN Associates, LLC, d/b/a Axia Women's Health," which Seven Hills argued was inconsistent with the parties' agreed-upon caption substitution reflected in the joint stipulation filed May 22, 2023.  (Doc. 36, Ex. B at PageID 422, citing Doc. 13; *see* Doc. 36, Ex. A at PageID 414).

On May 14, 2025, counsel for plaintiff contacted defense counsel requesting availability for the Rule 30(b)(6) deposition in June 2025 and seeking a meet-and-confer regarding defendant's supplemental discovery responses.  (Doc. 38, Ex. 1 at PageID 472).  On May 21, 2025, counsel for Seven Hills responded to plaintiff's April 5, 2025 Rule 30(b)(6) notice by raising various objections, including that the notice was untimely, the caption was incorrect, certain topics were overbroad, and some topics invaded the attorney-client and work product privileges.  (Doc. 36, Ex. B at PageID 422-24).  Notwithstanding those objections, Seven Hills stated it would comply with its obligations under Rule 30(b)(6) and prepare a witness to testify on the non-objectionable topics.  (*Id.* at PageID 424).  The May 21, 2025 letter identified June 18 and June 23, 2025 as available dates for the deposition.  (*Id.*).  Counsel for the parties conducted meet-and-confer communications on May 21 and 28, 2025.  (Doc. 38, Ex. 1 at PageID 472, 474-75).

On June 6, 2025, counsel for the parties conferred regarding Seven Hills' objections and responses to plaintiff's supplemental written discovery requests and the topics in the Rule

---

[6] The certificate of service on the notice represented that it had been served on April 4, 2025; however, Seven Hills contends—and email records attached to both parties' filings appear to indicate—that the notice was transmitted via electronic mail on Saturday, April 5, 2025.  (Doc. 36 at PageID 400, Ex. B at PageID 422; Doc. 38, Ex. 1 at PageID 472).

30(b)(6) notice. (*See* Doc. 33 at PageID 246). On June 18, 2025, counsel for Seven Hills responded further in writing, addressing plaintiff's specific objections to Seven Hills' discovery responses in a detailed letter. (Doc. 33 at PageID 246; Doc. 36, Ex. C at PageID 426-29). In that letter, Seven Hills reiterated its position that there was no ownership relationship between Seven Hills and AOM or RWHM. (Doc. 36, Ex. C at PageID 428).

On July 11, 2025, the parties filed a joint status report informing the Court that the Rule 30(b)(6) deposition of Seven Hills had not yet taken place. (Doc. 33 at PageID 245-46). The parties indicated they anticipated remaining witness depositions would occur ninety days after plaintiff conducted the Rule 30(b)(6) deposition. (*Id*.). The parties further stated that plaintiff's counsel was reviewing defense counsel's June 18, 2025 letter objecting to some of the Rule 30(b)(6) deposition topics and planned to confer further with defense counsel in an effort to reach agreement. (*Id*.). The Joint Status Report also noted, "This matter was filed on December 6, 2022. There have been several unavoidable delays as a result of personal circumstances beyond counsels' control but counsel have worked to move this case forward expeditiously and continue to do so." (Doc. 33 at PageID 245). The parties stated their intention to ask the Court to issue a new scheduling order with deadlines for completion of all discovery and the filing of dispositive motions after the Rule 30(b)(6) deposition was completed. (Doc. 33 at PageID 246).

On September 16, 2025, counsel for plaintiff sent an email to counsel for Seven Hills stating that, in the interest of moving the matter forward and avoiding further involvement of the undersigned, plaintiff intended to issue an amended Rule 30(b)(6) deposition notice adding topics covering ownership and corporate structure of Seven Hills, past and current. (Doc. 36, Ex. C at PageID 426). Counsel for Seven Hills acknowledged receipt that same day. (*Id.*). Plaintiff did not serve an amended Rule 30(b)(6) notice. (Doc. 36 at PageID 400-01).

    d. *Plaintiff's Efforts to Seek Consent to Amend and Filing of the Motion*

On September 29, 2025, plaintiff's counsel contacted defendant's counsel seeking consent to file an amended complaint adding Axia Ohio Management, Inc. and Regional Women's Health Management, LLC as defendants. (Doc. 35-2, Ex. A at PageID 273-76). On October 3, 2025, defendant's counsel declined to consent to the proposed amendment. (*Id.* at PageID 275). Plaintiff filed the pending motion for leave to file a first amended complaint on December 4, 2025. (Doc. 35).

## III. Applicable Law

Courts must consider both Fed. R. Civ. P. 15 and 16 when deciding whether to grant a motion to amend filed after the deadline established by the court's scheduling order. *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012). Untimely motions for leave to amend or supplement are in practice a request to modify the scheduling order under Fed. R. Civ. P. 16(b)(4). *Student Res. Ctr., LLC v. E. Gateway Cmty. Coll.*, No. 2:22-cv-2653, 2023 WL 6213678, at *5 (S.D. Ohio Sept. 25, 2023) (taking the majority approach in interpreting Rule 16(b)(4) to apply to both amendments and supplements to the pleadings).

    a. *Rule 16(b)*

Rule 16 allows for the modification of a scheduling order deadline "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A court may only modify a scheduling order deadline "if [the deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citing both the Fed. R. Civ. P. 16, 1983 advisory committee's notes and *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (finding that good cause can be measured by a movant's "diligence in

attempting to meet the case management order's requirements.")) (internal citation omitted). Another factor courts consider is the existence or degree of "possible prejudice to the party opposing the modification." *Inge*, 281 F.3d at 625 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).

   b.   *Rule 15(a)*

Rule 15 provides that a complaint may be amended once as a matter of course within 21 days of service of responsive pleadings. Fed. R. Civ. P. 15(a)(1)(B). If plaintiff wishes to amend the complaint after the 21-day period has expired, she must obtain consent of the opposing parties or leave of the Court. Fed. R. Civ. P. 15(a)(2). The grant or denial of a motion to amend under Fed. R. Civ. P. 15(a) is within the discretion of the trial court, and leave to amend a complaint should be liberally granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court must consider several factors in determining whether to permit an amendment to the complaint, including "undue delay or bad faith in filing the motion, repeated failures to cure previously identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (citing *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005)). Courts require "at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) (quoting *Siegner v. Twp. of Salem*, 654 F. App'x 223, 228 (6th Cir. 2016)) (internal citation omitted). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (internal quotation marks omitted)). "Prejudice to the party not seeking

10

alteration to the scheduling order should be a factor, but the main focus should remain on the moving party's exercise of diligence." *Cooke v. AT&T Corp.*, No. 2:05-cv-374, 2007 WL 188568, at *6 (S.D. Ohio Jan. 22, 2007) (citing *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (internal citation omitted)). Further, "[a]llowing an amendment after discovery is closed and summary judgment motions are fully briefed imposes significant prejudice on defendants." *Siegner*, 654 F. App'x at 228 (finding prejudice to the defendant when the amendment was filed one month after the dispositive motion deadline and two months after discovery closed) (internal quotation marks and citation omitted).

## IV. Analysis

Plaintiff's proposed amended complaint seeks to add AOM and RWHM as defendants under a joint employment theory. (Doc. 35; Doc. 36 at PageID 398). Seven Hills opposes plaintiff's amendment on four grounds: untimeliness, undue prejudice to Seven Hills and the proposed new defendants, bad faith and harassment on the part of plaintiff, and futility of the proposed amendment. (Doc. 36 at PageID 399).

The initial question before the Court is whether plaintiff has shown good cause to modify the scheduling order under Fed. R. Civ. P. 16(b)(4) and demonstrated that the deadline for amendments could not reasonably have been met. *Leary*, 349 F.3d at 906. Once the plaintiff meets the threshold requirements of Rule 16, then the Court must weigh the following factors under Rules 15(a)(2): whether undue delay or bad faith occurred in the motion filing, whether prior amendments failed to cure deficiencies in the complaint,[7] whether the proposed amendment would be futile, and whether permitting an amendment would result in unfair notice or undue prejudice to the non-movant. *Knight*, 930 F.3d at 786 (citing *Bridgeport*, 410 F.3d at 805).

---

[7] The Court need not address this element because this is plaintiff's first proposed amendment to the complaint.

11

*a.  Good cause*

Modifying a scheduling order deadline under Rule 16(b)(4) requires plaintiff to show she could not have met the deadline to amend despite her due diligence.  *Leary*, 349 F.3d at 906. Plaintiff's motion was filed more than two and one-half years after the Court's initial May 24, 2023 Order setting the deadline for filing a motion to amend the complaint.  (Doc. 12; Doc. 36 at PageID 401).  Plaintiff contends that the delay was attributable to defendant's repeated withholding of, and misleading representations concerning, the corporate relationships between Seven Hills, AOM, and RWHM.  (Doc. 35 at PageID 251-56; Doc. 38 at PageID 460-64).

Plaintiff argues that Seven Hills did not disclose the identity and role of affiliated entities operating under the name "Axia," thereby frustrating her ability to name the proper parties within the scheduling deadlines.  (Doc. 38 at PageID 463-64).  Specifically, plaintiff asserts that Seven Hills repeatedly represented throughout administrative proceedings and this action that "Axia" was merely a non-entity trade name of Seven Hills, disavowing any separate corporate existence or operational role, while failing to disclose that AOM and RWHM exercised comprehensive managerial control over Seven Hills and arguably functioned as joint employers. (Doc. 35 at PageID 253-54).  Seven Hills' position was contradicted by later-produced discovery and deposition testimony establishing that these entities exercised some control over employment decisions at issue, including plaintiff's termination.  (*Id.*).  Plaintiff contends that certain documents central to "Axia's" employment authority over Seven Hills' employees were produced only on the eve of defense witness depositions, and no substantive documents from AOM or RWHM were provided during ordinary discovery.  (*Id.*; Doc. 38 at PageID 465).

Defendant responds by arguing that plaintiff had actual or constructive knowledge of AOM's involvement or "lack thereof" with respect to her claims prior to initiating this litigation.

12

(Doc. 36 at PageID 403). Defendant argues that plaintiff was on notice as early as her own employment in early 2020 and was further apprised through numerous subsequent discovery responses. (*Id.*). During discovery, Seven Hills' responses to plaintiff's First Set of Interrogatories identified Jennifer Dunaway (Senior Vice President), Holly Woprice (Director of Operations), and Lisa Bortz (Senior HR Business Partner) as individuals with knowledge of plaintiff's investigation, termination, and medical accommodations, and disclosed that those individuals were employed not by Seven Hills but by AOM and/or RWHM. (Doc. 36, Ex. E at PageID 438). Seven Hills contends that this information placed plaintiff on notice of the role of AOM and RWHM. (Doc. 36 at PageID 403). Defendant further argues that plaintiff has possessed copies of the relevant materials, including the MSA between Seven Hills and AOM, since at least April 4, 2025, yet nonetheless waited eight months before seeking leave to amend. (*Id.* at PageID 404).

Plaintiff has acknowledged that she was aware of the term "Axia" during her employment. Specifically, plaintiff's EEOC charge, filed in October 2021, named the respondent using the trade name "Axia Women's Health." (Doc. 36 at PageID 403, Ex. D at PageID 435). Plaintiff argues, however, that while she was aware of an entity referred to as "Axia" whose employees were directly responsible for her termination, defendant repeatedly represented to the EEOC, in this litigation, and through counsel that "Axia" was not a legally distinct entity, and that defendant did not provide any information explaining the relationship between "Axia" and AOM or RWHM until the Court compelled those disclosures in April 2025. (Doc. 35 at PageID 253-55; Doc. 38 at PageID 462).

In support, plaintiff points to Seven Hills' response to Document Request No. 23, served on November 10, 2023, which stated: "'Axia' is a trade name, not a legal entity, and thus it does

not provide any duties, services, management, support, resources or functions to Seven Hills."
(Doc. 36, Ex. E at PageID 445; Doc. 38, Ex. 2 at PageID 488).  Plaintiff contends that this
representation was contradicted by documents later produced pursuant to the Court's March 26,
2025 Order  (Doc. 32).  Those documents revealed that "Axia" is a U.S. Patent Office trademark
owned by RWHM and used by AOM, and that AOM and RWHM held themselves out to Seven
Hills employees as "Axia" while controlling nearly every non-clinical aspect of the practice,
including human resources, policy, billing, and oversight functions relevant to plaintiff's
termination.  (Doc. 35 at PageID 253-56, citing Ex. U, Doc. 35-7 at PageID 394; Doc. 38 at
PageID 462-6).  Plaintiff states that these disclosed documents were initially requested on
August 28, 2023 (Doc. 38 at PageID 462), but not provided until nearly two years later when
compelled by Court Order.

Plaintiff has offered well-supported reasons for her delay in moving to amend the
complaint, and the circumstances she identifies are sufficient to establish "good cause" for
modification of the scheduling order.

  b.  *Undue Delay*

Defendant argues that granting plaintiff's motion to amend would cause undue delay
because she "has waited more than two and half years since the amendment deadline and more
than three years since filing her [c]omplaint to seek leave to amend her complaint and add new
parties."  (Doc. 36 at PageID 401).  The Court finds no undue delay on the part of plaintiff in this
case.

The record demonstrates that the delay in identifying AOM and RWHM as proper
defendants was caused, at least in part, by Seven Hills' own obfuscation of the "Axia" corporate
structure during discovery.  Since November 2023 onward, Seven Hills objected to discovery

14

concerning any relationship between Seven Hills and "Axia" entities and consistently represented that "'Axia' is a trade name, not a legal entity, and thus it does not provide any duties, services, management, support, resources or functions to Seven Hills." (Doc. 35-5, Ex. K at PageID 333, 335). That representation was directly contradicted by documents produced only after the Court's March 26, 2025 Order (Doc. 32) compelling supplemental discovery responses, which revealed that "Axia" is a trademark registered to and owned by RWHM and used by AOM, and that AOM controlled nearly every non-clinical aspect of Seven Hills' operations—including human resources, policy, billing, and oversight functions directly relevant to plaintiff's termination—pursuant to the MSA. (Doc. 35, Ex. Q, Ex. R at PageID 373, Ex. U at PageID 394). Seven Hills has admitted that plaintiff did not receive documents related to the business relationship between Seven Hills and AOM until April 4, 2025, which included the MSA specifying that AOM "managed the non-clinical operations of Seven Hills." (Doc. 36 at PageID 403-04). Defendant has also confirmed that the two individuals who participated in recommending or deciding plaintiff's termination—Holly Woprice (Director of Operations, RWHM) and Jennifer Dunaway (Senior Vice President, AOM)—were not Seven Hills employees at all but were employed by the proposed new defendants. (Doc. 36, Ex. E at PageID 438).

Further, "delay alone, does not justify denial of leave to amend" until such time as the delay becomes "'undue,' placing an unwarranted burden on the court." *Abner v. Convergys Corp.,* No. 1:18-cv-442, 2021 WL 9056617, at *2 (S.D. Ohio Apr. 7, 2021) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (citation omitted)). Even delays that would be considered "unduly long" may not be "undue" absent "other factors, such as prejudice to the defendant and plaintiff's unexplained lack of diligence." *Abner,* 2021 WL 9056617, at *2 (citing

15

*Moore v. City of Paducah*, 790 F.2d 557, 559, 561 (6th Cir. 1986) (reversing the district court's order denying of plaintiff's motion to amend where the trial court relied on the reasoning that "undue delay alone may be sufficient to deny a motion to amend a complaint when the movant fails to justify the delay")).

In this case, plaintiff has provided a detailed, record-supported explanation for the delay. Until the Court's March 26, 2025 Order (Doc. 32) compelling supplemental discovery responses, Seven Hills consistently characterized "Axia" as a non-entity trade name of Seven Hills itself, and objected to discovery concerning any relationship between Seven Hills and "Axia" entities. (Doc. 35-5, Ex. K at PageID 335; Doc. 36, Ex. E at PageID 445). Plaintiff had no means to identify the separate corporate existence, or the employer-level functions, of AOM and RWHM until defendant produced the MSA and related documents in April 2025—documents initially sought in August 2023 and produced only after court intervention. The Court itself ordered two supplemental discovery responses from Seven Hills and convened at least two informal discovery conferences concerning the relationship between Seven Hills, AOM, and RWHM. (Doc. 20; Doc. 32). Following those disclosures, communications between the parties indicated they continued to meet and confer through September 2025. (Doc. 36, Ex. C; Doc. 38, Ex. 1). The delay in this case was not undue and does not support a denial of the motion to amend.

c. *Prejudice*

Defendant argues that plaintiff's proposed amendment would unduly prejudice Seven Hills, AOM, and RWHM because: (1) discovery has been ongoing for years and is substantially complete; and (2) adding two new corporate defendants would necessitate reopening discovery on a significant scale, encompassing corporate relationships, policies, and the roles of numerous additional individuals who no longer work for any of the entities involved, inevitably increasing

16

litigation costs and further delaying resolution of the matter.  (Doc. 36 at PageID 405-07).

Defendant further argues that plaintiff's "years-long delay" diminishes the showing of prejudice

this Court must find in order to deny leave to amend, and the Court should consider whether the

new claims would require Seven Hills to expend significant additional resources and

substantially delay resolution of the dispute.  (*Id.* at PageID 406).  Finally, defendant contends

that plaintiff would suffer no substantive prejudice from denial, as she may still advance the

same legal arguments against Seven Hills, and Seven Hills has already stipulated that it will not

allege or attempt to disclaim liability to "Axia Women's Health" or any related entity, as

reflected in the parties' agreement to correct the case caption at the outset of this litigation.  (*Id.*).

Plaintiff responds by arguing that Seven Hills' claimed prejudice from adding new

defendants is speculative and unsupported.  (Doc. 38 at PageID 466).  Plaintiff points out that

Seven Hills identifies no concrete harm—no specific discovery to redo, no witnesses to re-

depose, and no wasted resources.  (*Id.* at PageID 466, 469).  Plaintiff further notes that the

proposed new defendants share the same counsel as defendant, are alleged to have engaged in the

same conduct under the same facts, and were already on notice of plaintiff's claims through her

EEOC charge.  (*Id.* at PageID 464).

Plaintiff also disputes defendant's claim that amendment would require reopening

discovery, arguing instead that defendant's own evasiveness during discovery necessitated the

delay in identifying the new parties.  (*Id.* at PageID 465).  Plaintiff contends that obtaining

discovery from the proposed new defendants through third-party subpoenas would be inefficient,

invite non-compliance, and burden the Court, whereas adding them as defendants would allow

orderly, supervised discovery among all relevant parties.  (*Id.* at PageID 465-66).  Because no

trial date has been set and discovery remains open, plaintiff contends that amendment would

cause no meaningful disruption.  (*Id.*).  Plaintiff argues that denying amendment would instead entrench an informational imbalance, as defendant already enjoys ready access to documents and witnesses held by its affiliated entities.  (*Id.* at PageID 466).

As an initial note, the Court finds Seven Hills' argument that the amendment would unduly prejudice AOM and RWHM not relevant to the analysis under Rule 15(a) because "the only possible prejudice that matters here is what [d]efendant may face, not the prospective defendants."  *Gm Glob. Tech. Operations, LLC v. Quality Collision Parts, Inc.,* No. 23-13026, 2026 WL 195010, at *18 (E.D. Mich. Jan. 26, 2026) (citing *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) and *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (both referring to the "opposing party" when discussing prejudice)).  *See also Conant v. Noble Corr. Inst.,* No. 2:23-cv-01148, 2024 WL 3926730, at *2 (S.D. Ohio July 19, 2024), *report and recommendation adopted,* 2024 WL 3926060 (S.D. Ohio Aug. 22, 2024) (denying defendant's motion to strike the plaintiff's amended complaint adding new defendants because the defendant "lack[ed] standing to challenge the merits of claims that are directed against [proposed] defendants, rather than against him") (citing *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1006 (N.D. Cal. 2010)).

The proper question before the Court is whether Seven Hills will suffer undue prejudice and not merely the prejudice attendant to defending a lawsuit.  "In determining whether [d]efendant[] will incur undue prejudice by granting [p]laintiff['s] motion, the Court must focus on whether the amendment would make the case unduly complex and confusing and whether the defending party would have 'conducted the defense in a substantially different manner' had the amendment been previously tendered."  *Morrison v. Sunoco, Inc.,* No. 1:09-cv-283, 2011 WL 13311722, at *4 (S.D. Ohio Jan. 10, 2011) (quoting *Gregg v. Ohio Dep't of Youth Servs.*, 661 F.

18

Supp. 2d 842, 850 (S.D. Ohio 2009) (citing *Duchon v. Cajon Co.*, 791 F.2d 43 (6th Cir. 1986) and *General Elec. Co. v. Sargent and Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990))).

Here, discovery is not complete—it is actively ongoing and was deliberately stayed by the Court pending resolution plaintiff's proposed Rule 30(b)(6) deposition of defendant. (Doc. 32; Doc. 33 at PageID 246). The dispositive motion deadline is likewise stayed. (Doc. 33). Further, the proposed amendment does not add new claims; it adds two defendants allegedly responsible for the same conduct under the same facts already at issue. (Doc. 35 at PageID 251; Doc. 38 at PageID 464). Therefore, no new factual investigation is required by Seven Hills.

Seven Hills has failed to demonstrate undue prejudice from the proposed amendment. Discovery remains open and no trial date has been set. Defendant has not shown that it will suffer any prejudice beyond what it suffers as a defendant in any action, nor has it presented an argument that the amendment would create confusion or make the case unduly complex. As noted by Seven Hills, "[p]laintiff's proposed [f]irst [a]mended [c]omplaint adds not even a single new fact or allegation to the [c]omplaint; rather, it only adds the two additional entities . . . and assigns each of the allegations against Seven Hills also to AOM and RWHM. . . ." (Doc. 36 at PageID 408). Seven Hills admits that plaintiff's "substantive legal arguments against Seven Hills" apply equally to AOM and RWHM, and that Seven Hills' defenses would remain unchanged. (Doc. 36 at PageID 406-07). Seven Hills has presented "no basis for the Court to conclude that [it] would be prejudiced by the addition of [new defendants] in this case." *White v. Akron Beacon J. Pub. Co.,* No. 5:09-cv-2193, 2010 WL 446079, at *1 (N.D. Ohio Feb. 2, 2010).

### d. Bad Faith

Next, defendant argues that plaintiff's motion to amend is motivated by bad faith, as evidenced by a pattern of personal attacks against defendant and its counsel and a litigation

19

strategy designed to harass and delay rather than advance legitimate claims.  (Doc. 36 at PageID 407).  Defendant further emphasizes that plaintiff had the prior opportunity to explore the relationships among relevant entities through a Rule 30(b)(6) deposition noticed in April 2025, yet plaintiff delayed further action for months and ultimately failed to follow through on a proposed amended deposition notice addressing ownership and corporate structure.  (*Id.*).

Plaintiff contends that she elected not to proceed with the Rule 30(b)(6) deposition and instead sought Seven Hills' consent to file an amended complaint.   (Doc. 35 at PageID 255-56; Doc. 38 at PageID 461).  Plaintiff explains that her April 5, 2025 Notice of Rule 30(b)(6) Deposition was premised primarily on Seven Hills' suspected failure to produce documents within its control or possession, notwithstanding three conferences and two discovery extensions granted by the Court.  (Doc. 38 at PageID 462, fn.1).  Plaintiff further explains that the proposed deposition topics concerning Seven Hills' corporate ownership and contractual relationships are largely moot in light of the supplementary discovery served by defendant on April 4, 2025, and that such topics would be rendered entirely unnecessary should defendant withdraw its numerous objections to the Notice and to the discovery requests.  (*Id.*, citing Doc. 36, Ex. B at PageID 422-23; Ex. C at PageID 426-27).

The Court notes that on December 18, 2023, the parties filed a *joint* motion to extend discovery and dispositive motion deadlines stating that "[t]he parties have some lingering disputes regarding written discovery responses but are actively working to resolve" and "have worked cooperatively to complete discovery."  (Doc. 17 at PageID 114).  On July 11, 2025, the parties submitted a *joint* status report stating that the parties had experienced "several unavoidable delays as a result of personal circumstances beyond counsels' control but counsel have worked to move this case forward expeditiously and continue to do so."  (Doc. 33 at

20

PageID 245). Further, Seven Hills has not pointed to any evidence indicating plaintiff or plaintiff's counsel acted in bad faith. While Seven Hills states plaintiff delayed the Rule 30(b)(6) deposition "for months," communications between the parties indicate they continued to meet and confer through September 2025. (Doc. 36, Ex. C; Doc. 38, Ex. 1). The Court finds no bad faith in plaintiff's filing of the instant motion.

e. *Futility*

Seven Hills argues that the proposed amendment should be denied because it fails to plead sufficient facts to support liability against AOM or RWHM under any theory, adding no new factual allegations and merely appending two additional entities. (Doc. 36 at PageID 408). Seven Hills contends that AOM and RWHM are Management Services Organizations—entities that provide non-clinical administrative functions such as billing, collections, human resources, and facility management—and that neither AOM nor RWHM was plaintiff's employer at any time. (*Id.*). Defendant asserts that Seven Hills was plaintiff's sole employer. (*Id.*).

As a threshold matter, the Court notes that Seven Hills does not argue that the proposed amendment would be futile as to the claims asserted against it. Rather, it contends that it should remain the sole defendant in this action and that the addition of AOM and RWHM would be futile. In making this argument, Seven Hills advances futility positions solely on behalf of the proposed new defendants, yet it "ha[s] not cited any authority that would allow a nonparty to object to amendment of a complaint or authorize present parties who are unaffected by the proposed amendment to assert claims of futility on behalf of the proposed new defendant." *Clark v. Hamilton Mortg. Co.,* No. 1:07-CV-252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008). However, even if the Court considers Seven Hills' futility arguments, they would nonetheless fall short.

21

Plaintiff is seeking to add AOM and RWHM under a joint-employer theory.  The Sixth Circuit has recognized the joint-employer theory as a viable basis for liability under Title VII and related employment statutes where the proposed defendants co-determined the essential terms and conditions of employment.  *See E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253 (6th Cir. 2013) (reversing summary judgment and holding that entities are joint employers if they share or co-determine those matters governing essential terms and conditions of employment). Although the evidence may show that an entity is not the plaintiff's formal employer, this does not end the court's inquiry concerning whether the entity may be held liable as an employer for discrimination and retaliation.  "Entities that do not otherwise meet the definition of employer (either because they do not formally employ the plaintiff or do not meet the numerosity requirement) may still face liability through the single-employer or joint-employer doctrines." *Sanford*, 449 F. App'x at 491 (citing *Swallows,* 128 F.3d at 993).  Through application of these doctrines, an entity that is not the plaintiff's formal employer can be treated as if it were for purposes of Title VII and Ohio Law.  *Id.  See also Burt v. Maple Knoll Communities, Inc.*, No. 1:15-cv-225, 2016 WL 3906233, at *6 (S.D. Ohio July 19, 2016) (applying joint-employer theory in a retaliation case brought under Title VII and Ohio Rev. Code § 4112); *Sampson v. Sisters of Mercy of Willard*, Ohio, No. 3:12-cv-00824, 2015 WL 3953053, at *4 (N.D. Ohio June 29, 2015) (Ohio courts have engaged in similar analysis to that used by federal court when considering if an entity that did not directly employ the plaintiff can be considered an employer) (citing Ohio cases).  The joint-employer doctrine applies when a business "maintains sufficient control over some or all of the formal employees of another business as to qualify as those employees' employer [although] the two businesses are in fact independent."  *Sanford v. Main St. Baptist Church Manor, Inc.,* 449 F. App'x 488, 491 (6th Cir. 2011); (citing *Swallows v.*

*Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)). Factors the courts consider include "the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance," *Sanford*, 449 F. App'x at 492 (6th Cir. 2011) (citing *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 595 (6th Cir. 2009) (*Sanford I*), as well as the "supervision of the employees' day-to-day activities, promulgation of work rules, conditions of employment, and work assignments, and issuance of operating instructions." *Williams v. City of Columbus, Ohio*, 892 F. Supp. 2d 918, 929 (S.D. Ohio 2012) (citing *Woods v. Washtenaw Hills Manor,* No. 07–CV–15420, 2009 WL 2222629, at *17 (E.D. Mich. July 23, 2009)).

Seven Hills asserts that "[p]laintiff has not provided any facts or case law to support an argument that MSOs AOM or RWHM jointly employed her." (Doc. 36 at PageID 408). Seven Hills alleges that plaintiff's assertion that "Axia" owned it is contradicted by the evidentiary record, including extensive discovery already produced, which purportedly demonstrates no such ownership relationship. (Doc. 36 at PageID 407). According to defendant's interrogatory responses, AOM provided operational services to Seven Hills from January 1, 2020 through December 31, 2022, pursuant to an MSA, but exercised no ownership interest in Seven Hills and did not employ any employees who provided clinical services. (Doc. 36, Ex. F at PageID 452). Seven Hills states that RWHM began providing operational services to Seven Hills on January 1, 2023—after plaintiff's December 31, 2020 termination—and likewise held no ownership interest in Seven Hills. (*Id.*). Defendant further argues that RWHM had no business relationship with Seven Hills during the relevant period. (Doc. 36 at PageID 408).

The Court finds the motion to amend should not be denied on the basis of futility. The proposed amended complaint alleges factors that suggest AOM and RHWM were joint

23

employers with Seven Hills.  The proposed amended complaint alleges Seven Hills, AOM, and

RWHM were plaintiff's employers (Doc. 35-1, PageID 264); plaintiff reported to employees of

both AOM (Senior Vice President Jennifer Dunaway) and RWHM (Operations Director Holly

Woprice) when she was promoted to ultrasound manager (*Id*. at PageID 265); she advised

employees of AOM and RWHM (Dunaway and Woprice) that she needed additional surgery and

more time off (*Id*. at PageID 266); and employees of AOM and RWHM (Dunaway and Woprice)

were involved in the decision to terminate plaintiff's employment.  (Doc. 35-1 at PageID 267).

Thus, employees of AOM and RWHM had the ability to terminate plaintiff's employment,

supervise her performance, and direct the conditions of her employment.  These factors plausibly

support the finding of joint employment between Seven Hills, AOM, and RWHM.  *Sanford,* 449

F. App'x at 492.  Although Seven Hills may have no ownership interest in AOM or RWHM (or

vice versa), Seven Hills' own discovery responses reveal evidence of a joint employer

relationship.  Seven Hills relied on AOM for human resource services during the period of

plaintiff's employment.  (Doc. 35-7, Ex. Q [under seal]; Doc. 35-7, Ex. U).  *See Arnott v. Holzer

Health Sys*., No. 2:22-cv-4552, 2024 WL 5187000, at *6 (S.D. Ohio Dec. 20, 2024) (finding

joint employers where company provided human resource services and participated in making

termination decisions for clinic that actually employed the plaintiff); *3750 Orange Place L.P. v.

NLRB,* 333 F.3d 646 (6th Cir. 2003) (finding that defendant hotel and management services

company were joint employers where they entered into a management agreement granting the

management services company the right to hire, discharge, and train employees).  Seven Hills

also produced a "HIPAA Compliance Policy and Procedure Manual" effective March 1, 2018

that states it is "the HIPAA Compliance Manual for Regional Women's Health Group, LLC. . .

." (Doc. 35-5, Ex. O, at PageID 361-62).  This manual is particularly relevant because plaintiff

24

was allegedly terminated for violating HIPAA.  (Doc. 1, Doc. 35-1).  Further, Human Resources Director for Axia Women's Health, Lisa Bortz, confirmed that "Axia had 'acquired' Seven Hills during [p]laintiff's employment."  (Bortz Dep. Doc. 35-3, Ex. C at PageID 287).  After plaintiff was terminated, she received a letter with the Axia Women's Health trademark at the top and signed by Jay Getto, Vice President of Human Resources for Axia Women's Health expressing that "our working relationship has ended" and explaining changes to her benefits.  (Doc. 35-3, Ex. E at PageID 293-94).  Finally, the Employee Handbook for Regional Women's Health Group, LLC, Seven Hills OB-GYN Associates Inc., Axia Ohio Management, Inc. d/b/a Axia Women's Health states, "This Employee Handbook effective March l, 2020 ("Handbook") is designed as a general reference to provide an overview of the policies, procedures, and employee benefits of *all Axia Women's Health companies*, including subsidiaries.  ("AXIA" or the "Company")."  (Doc. 35-4, Ex. F at PageID 296, 300 (emphasis added)). [8]

Whether or not plaintiff can ultimately prove her joint-employer theory, she is not required to do so at this stage.  A proposed amendment is futile only if it could not survive a motion to dismiss under Rule 12(b)(6); the futility inquiry does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment.  *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420-21 (6th Cir. 2000).  Plaintiff is required only to allege facts plausibly supporting her joint employer claims against AOM and RWHM; she is not required to prove liability, particularly in the absence of complete discovery. [9]  The

---

[8] Plaintiff states she did not include the above details of the MSA or other documents in the proposed amended complaint because additional facts were obtained from documents produced during discovery under an attorney's eyes only provision.  (Doc. 38 at PageID 467).  Seven Hills' response to the motion to amend includes references to the MSA and identifies AOM and RWHM as Management Services Organizations affiliated with Seven Hills. Given these references by Seven Hills, plaintiff has appended to her reply brief an updated amended complaint that includes details of the relationship between Seven Hills, AOM, and RWHM.  The Court finds the proposed amended complaint (Doc. 35-1) is sufficient and will not consider the appended updated amended complaint.

[9] Seven Hills argues the amendment is also futile because "Seven Hills is financially capable of satisfying a

25

Court finds that plaintiff has plausibly pled a theory of joint employment sufficient to add AOM and RWHM as defendants.

## V.     Conclusion

**IT IS THEREFORE ORDERED THAT** plaintiff's motion for leave to file a first amended complaint (Doc. 35) is **GRANTED**.  The Clerk of Court is **DIRECTED** to file plaintiff's amended complaint as a separate docket entry.  (*See* Doc. 35-1).


Date: 4/27/2026

Karen L. Litkovitz
United States Magistrate Judge

---

judgment should [p]laintiff ultimately obtain positive relief on her claims and Seven Hills has told Plaintiff it will not allege or attempt to disclaim any liability to Axia or any other related entity." (Doc. 36 at PageID 409; see also Doc. 13 at PageID 42). The Court is not persuaded that this is a basis to deny the motion to amend.  Seven Hills cites to an unreported case from the Middle District of Florida, *Castillo v. N & R Servs. of Cent. Fla., Inc.*, No. 8:07-cv-1804, 2008 WL 11336557, at *1 (M.D. Fla. Dec. 9, 2008), to argue that "[c]ourts have denied permissive joinder of affiliated corporations in similar cases where, as here, the plaintiffs could obtain full relief from the existing corporate defendant." (Doc. 36 at PageID 409).  In *Castillo*, the court denied the plaintiffs' motion to add subsidiary corporations as defendants principally because the motion was filed months after the scheduling order's amendment deadline and the plaintiffs failed to demonstrate good cause for the delay.  *Castillo*, 2008 WL 11336557, at *1. Further, the court's observation that full relief was obtainable from the existing defendants was a secondary consideration, and the court noted that the claims against the proposed additional defendants involved separate worksites, separate workforces, and distinct factual questions that would ultimately require bifurcation of any trial. *Id*. at *1-2.  Here, plaintiff does not seek to add unrelated corporations with separate employees and distinct worksites; rather, she seeks to add AOM and RWHM, entities that defendant admits controlled Seven Hills' human resources and billing functions as MSOs and whose involvement in the conduct giving rise to plaintiff's claims became apparent only through court-ordered discovery produced in 2025. (Doc. 36 at PageID 408, Ex.  F at PageID 452).

26